# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | 2:14-271 |
|  | ) |  |
| CHARLES DAVIS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM ORDER

Pending before the Court is a MOTION IN LIMINE (ECF No. 53) filed by Defendant Charles Davis. The government has filed a response (ECF No. 55). For the reasons that follow, the motion will be **DENIED**.

### I. Background[1]

On July 5, 2012, federal agents met with a confidential informant ("CI") to conduct a controlled purchase of heroin from Charles Davis, who was known to the CI as a heroin distributor. In advance of the meeting, several telephone calls and text messages were exchanged between Davis and the CI's girlfriend to set up the meeting.[2] Throughout, Davis used cellular telephone number 412-506-2179. The plan was to meet the defendant near his place of employment, which was TNT Fashions located at 6401 Penn Avenue, Pittsburgh, Pennsylvania 15206.

In the afternoon of July 5, 2012, Pittsburgh Bureau of Police Detective Dale Ford drove the CI and the CI's girlfriend to the shopping plaza in the 6400 block of Penn Avenue to meet with Davis. Various surveillance units were also in position. They observed the CI's girlfriend

---

1. This background narrative is drawn from the facts set forth in the government's response in opposition to Defendant's motion in limine.

2. The CI's girlfriend had a good relationship with Davis, and she coordinated the majority of the transaction. She did not, however, know that the CI was then cooperating with the government.

walk into the Staples store located at 6375 Penn Avenue to meet with Davis. According to the CI, Davis instructed the CI's girlfriend to meet him at this location. Shortly thereafter, Davis exited the Staples and walked across the parking lot to a red Mercedes sedan.

Inside the store, Davis allegedly completed the transaction. Davis also allegedly indicated that "he threw in some extra bags because the white ones were small." Gov.'s Br. at 2. The CI's girlfriend then provided the suspected heroin to the CI, who was not present at the actual exchange. Sixteen bricks of heroin – twelve bricks containing yellow bags and four bricks containing white bags – were then recovered by the agents from the CI.

Unbeknownst to the agents working on this case, Davis was also the target of an undercover operation conducted by the Pittsburgh Bureau of Police. On June 27, 2012, undercover police officers contacted Davis by telephone on the same number used by the CI's girlfriend to contact the defendant. That day, the undercover officers purchased one bundle (ten glassine bags) of heroin from Davis for eighty-dollars ($80). They then arranged for a second controlled purchase of heroin from Davis for July 8, 2012 – three days after the controlled purchase at issue in this case.[3] Afterward, the police officers arrested Davis. Davis pleaded guilty in the Court of Common Pleas of Allegheny County to delivering controlled substances.

On December 9, 2014, a federal grand jury in the Western District of Pennsylvania returned a one-count Indictment against Davis, charging him with possession with the intent to distribute and distribution of heroin on or about July 5, 2012, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

---

3. The government has provided a picture of the glassine bags of heroin purchased from Davis on July 12, 2012 (the subject of this case) and from him on July 8, 2012. The glassine bags appear virtually identical.

## II. Discussion

### A. Necessary Witness

Davis first asks the Court for a ruling on whether the CI's girlfriend is a necessary witness. In other words, he requests a determination of "whether the female in question must be called by the government in order for [it] to meet [its] burden of proof." Def.'s Mot. at 2. In response, the government represents that it fully intends to call the CI's girlfriend as a witness at trial, and therefore, there is no need to rule on the motion. Alternatively, the government contends that even if it does not call the CI's girlfriend as a witness, the issue raised by Davis is not justiciable.

The Court agrees with the government's positions. As an initial matter, the Court has no reason to doubt the representation of the government. This issue is, therefore, moot. It also is not justiciable. Article III of the United States Constitution "limits federal 'judicial Power' to the adjudication of 'Cases' or 'Controversies.'" *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). "Courts enforce the case-or-controversy requirement through the several justiciability doctrines that 'cluster about Article III,'" such as "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Id.* (citations omitted). Davis asks the Court to, in essence, issue an advisory opinion on a matter that would only become ripe after the government has presented its case-in-chief without presenting the CI's girlfriend as a witness. Under well-settled constitutional principles, the Court declines to do so. Accordingly, Davis' motion in limine on this point is **DENIED**.

### B. Rule 404(b)

Davis next asks the Court to "determine whether the evidence of the prior conviction and/or the evidence of the phone used and packaging of heroin will be admissible in the current

trial." Def.'s Mot. at 2. Davis cites no authority in support of this request. In response, the government represents that it intends to seek admission of this evidence under Federal Rule of Evidence 404(b). The government anticipates that Davis will contend that someone else could have supplied the stamp bags to the CI's girlfriend.

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may be admissible for another relevant purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

"Rule 404(b) is a rule of general exclusion, and carries with it 'no presumption of admissibility.'" *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:28, at 731 (4th ed. 2013)). Thus, the "permitted uses" should be treated as "exceptions" to the general rule, and "[a]s is generally the case with exceptions," the burden of establishing that the evidence is admissible falls on the proponent of the evidence—in this case, the government. *Id.* And because of the highly prejudicial nature of other-acts evidence, the rule "requires care from prosecutors and judges alike." *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013).

The Court must thus follow a four-part framework in deciding whether evidence should be admitted under Rule 404(b): prior act evidence is inadmissible unless the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested. *Id.* at 441 (citations omitted).

4

The first step requires the Court to determine "whether the evidence is probative of a material issue other than character." *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2003) (citations omitted). To determine whether an "identified purpose is 'at issue,' courts should consider the 'material issues and facts the government must prove to obtain a conviction.'" *Caldwell*, 760 F.3d at 276 (quoting *United States v. Sampson,* 980 F.2d 883, 888 (3d Cir. 1992)). While "the burden on the government is not onerous," *Sampson*, 980 F.2d at 887, our court of appeals has "stress[ed] that 'a proponent's incantation of the proper uses of [prior act] evidence . . . does not magically transform inadmissible evidence into admissible evidence," *Caldwell*, 760 F.3d at 276 (quoting *United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999)). Rather, the specific purpose must be "'of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401(b)).

At the second step of the analysis, the government must "explain how the evidence is relevant" to, or how it tends to establish, the identified non-propensity purpose. *Id.* "This step is crucial." *Id.* The government "must clearly articulate how that evidence fits into a chain of logical inferences, *no link of which* can be the inference that because the defendant committed . . . [such an act] before, he therefore is more likely to have committed this one.'" *United States v. Lee,* 612 F.3d 170, 186 (3d Cir. 2006) (quoting *Sampson*, 980 F.2d at 887) (emphasis added). If the government fails "to articulate this chain of inferences," the Court must exclude the proffered evidence. *Caldwell,* 760 F.3d at 277 (citing *Sampson,* 980 F.2d at 888).

The Court's task is not over even "once it finds the proponent has shown that the evidence is relevant for a proper, non-propensity purpose." *Id.* The Court must then proceed to decide, under Rule 403, "whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence." *Id.*

(citing *Sampson,* 980 F.2d at 889). The Rule 403 balancing takes on special significance when dealing with Rule 404(b) evidence because "'few categories of evidence bring greater risk of prejudice to the accused . . . .'" *Id.* (quoting Mueller, *Federal Evidence* § 4:28, at 731). If the Court determines that the evidence survives the Rule 403 balancing test, then it must still provide a limiting instruction to the jury at the time the evidence is admitted if so requested by the defendant. *Id.*

Here, the government has made its required showing. First, the government does not intend to seek admission of this evidence to establish Davis' propensity to commit crimes. Rather, the "evidence assists in establishing that [Davis] had the opportunity and intent to possess the particular stamp bags at issue in this case" and "that he used a particular telephone number at issue in this case."[4] Gov.'s Br. at 7. In other words, the evidence helps to show that Davis – rather than some unidentified third-party – sold this heroin to the CI's girlfriend on July 5, 2012.

Second, the government sets forth several "reasonable inferences" – which it calls a "direct link" elsewhere in its filing – to support the introduction of this evidence. As the government represents, Davis' possession of a distinctive type of stamp bag both shortly before and shortly after July 5, 2012 is indicative of his opportunity and intent to possess that particular type of stamp bag on July 5, 2012 and "makes his knowing possession of those stamp bags on July 5, 2012 exponentially more likely." Gov.'s Br. at 5. Furthermore, his use of a particular telephone number to arrange for a heroin transaction on June 27, 2012 and July 8, 2012 is evidence that it belongs to him, which may establish the defendant's identity as the person communicating with the CI's girlfriend to arrange the heroin deal.

---

4. Although the government cites "opportunity and intent" as the proper non-propensity purposes, it also repeatedly implies that identity is a proper purpose for the admission of the evidence. *See* Fed. R. Evid. 404(b)(2).

Third, the evidence survives a Rule 403 balancing test, *i.e.* the probative value is not substantially outweighed by the danger that the jury will consider the evidence to infer bad character on the Defendant's part. The evidence at issue is probative, to be sure. After all, "[e]stablishing the defendant as the person in possession of the stamp bags and as the person who used the telephone on July 5, 2012 is, of course, relevant to the key, if not sole, issue in this case. *Id.* On the other hand, the risk that a jury will infer from his other criminal activity that the Defendant has a propensity to commit drug offenses is real. That risk can, however, be contained by a jury instruction limiting the consideration of the evidence to its proper purpose. In view of that, the Court finds that the probative value of statements is not substantially outweighed by the danger of unfair prejudice or any of the other factors set forth in Rule 403. Accordingly, Defendant's motion in limine on this point is **DENIED**.

### III. Conclusion

A Pre-Trial Conference in this matter is hereby scheduled on Wednesday, June 29, 2016 at 1:00 PM in Courtroom 6C, United States Courthouse, 700 Grant Street, Pittsburgh, PA 15219, at which Defendant shall appear in-person.

**SO ORDERED**, this 21st day of June, 2016.

BY THE COURT:

s/ Terrence F. McVerry
Senior United States District Court Judge

cc: Brendan T. Conway
Email: brendan.conway@usdoj.gov
Neil E. Rothschild
Email: njd60629294@yahoo.com